```
 1                  UNITED STATES DISTRICT COURT

 2                            FOR THE

 3                   DISTRICT OF SOUTH CAROLINA

 4                     SPARTANBURG DIVISION

 5   * * * * * * * * * * * * * *
     UNITED STATES OF AMERICA,   * CRIMINAL NO. 7:11-CR-02025
 6                               * CRIMINAL NO. 7:23-CR-00155
                                 * FEBRUARY 05, 2024 9:30 A.M.
 7                 Plaintiff,    * SUPERVISED RELEASE VIOLATION &
                                 * SENTENCING HEARING
 8   vs.                         *
                                 *
 9   WILLIAM MICHAEL HALL,       * Before:
                                 * HONORABLE DONALD C. COGGINS, JR.
10                               * UNITED STATES DISTRICT JUDGE
                   Defendant.    * DISTRICT OF SOUTH CAROLINA
11   * * * * * * * * * * * * * *
     APPEARANCES:
12
     For the Plaintiff:      CHRISTOPHER BRADEN SCHOEN, AUSA
13                           United States Attorneys Office
                             55 Beattie Place, Suite 700
14                           Greenville, SC  29601

15

16   For Defendant William Michael Hall:

17                           D. JOSEV BREWER, ESQUIRE
                             The Law Office of Josev Brewer
18                           650 E Washington Street
                             Greenville, SC  29601
19

20

21   Court Reporter:         Michele E. Becker, RMR, CRR, RPR
                             250 E North Street
22                           Greenville, SC  29601
                             (864) 905-8888
23
     Proceedings recorded by mechanical stenography, transcript
24   produced by computer.

25
```

1          **P R O C E E D I N G S**

2     (Court convened at 9:30 a.m.)

3          **THE COURT:**  Thank you.  Please be seated.  All

4     right.  Mr. Schoen.

5          **MR. SCHOEN:**  Good morning, Your Honor.  May it

6     please the Court.  The case before the Court this morning is

7     7:23-CR-155.  It's the United States of America versus William

8     Michael Hall, and we're here for sentencing.

9          **THE COURT:**  All right.  Mr. Brewer.

10         **MR. BREWER:**  Good morning, Your Honor.  We're

11    prepared to proceed.

12         **THE COURT:**  All right.  Thank you, sir.

13         All right.  We've got the supervised release

14    violation and the underlying count to which Mr. Hall has pled

15    on the new criminal conduct.

16         Mr. Brewer, are you prepared to proceed on both and

17    is there any objection to proceeding on both simultaneously?

18         **MR. BREWER:**  We're prepared to proceed on both,

19    Your Honor, and we'd prefer to proceed on both.  And because

20    the core of the supervised release violation is the new

21    underlying conduct, we'd specifically ask the Court to kind of

22    consider the whole circumstances globally with respect to the

23    hearing and any sentencing you'd order.

24         **THE COURT:**  All right.  Madam Clerk, would you swear

25    Mr. Hall.

1      THE CLERK:  Sir, please stand, raise your right hand
2  and state your name for the record.
3      THE DEFENDANT:  William Michael Hall.
4      (Whereupon, the defendant is duly sworn on oath.)
5      THE DEFENDANT:  Yes, ma'am.
6      THE COURT:  Thank you, sir.  Mr. Hall, this morning
7  we're going to be proceeding on both the supervised release
8  violation that you are charged with as well as the sentencing
9  in the underlying conduct, what is referred to as your
10 supervised release violation report of new criminal conduct,
11 the conduct to which you pled guilty on the current
12 indictment.  We're going to go forward on both of those.  Do
13 you understand that?
14     THE DEFENDANT:  Yes, sir.
15     THE COURT:  Do you have any concerns about going
16 forward on both of those this morning?
17     THE DEFENDANT:  No, sir.
18     THE COURT:  All right.  Let me ask you first, with
19 respect to the supervised release violation report, have you
20 had an adequate opportunity to review that report and go over
21 it with Mr. Brewer?
22     THE DEFENDANT:  Yes, sir.
23     THE COURT:  Has he explained it to you and answered
24 any questions you had concerning it?
25     THE DEFENDANT:  Yes, sir.

1          THE COURT:  And do you need any additional time to

2    review it or confer with him before we proceed?

3          THE DEFENDANT:  No, sir.

4          THE COURT:  Do you understand the report?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  All right.  And just for clarification

7    of the record, that is in case 11-2025.  Now, in the current

8    case, 23-155, with respect to the presentence investigation

9    report, in that case Mr. Hall, have you had an adequate

10   opportunity to review that report and go over it with

11   Mr. Brewer?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  And has he explained that report to you?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  Has he answered any questions you had

16   concerning it?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  Do you need any additional time to

19   review it or confer with him about it?

20         THE DEFENDANT:  No, sir.

21         THE COURT:  Do you understand it?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  And are you ready to proceed on it?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  Mr. Brewer, with respect to the report

1    in the 155 case, the Court notes that probation filed a

2    revised report this past Friday afternoon.  Based upon my

3    review and my consultation with probation, my understanding is

4    that there were no changes except some additions to

5    probation's response to defense objection number 3.  In light

6    of that, do you need any more time to go over that with

7    Mr. Hall or are you willing to waive any further review

8    period?

9            MR. BREWER:  We're willing to waive any further

10   review period.  I had a chance to review the additions, and it

11   was consistent essentially with what the pretrial service

12   officer's responses had already been, and it doesn't

13   materially affect this morning.

14           THE COURT:  All right.  And let me just go over with

15   you with respect to the reports, and both of them, have you

16   had a sufficient opportunity to review those reports and go

17   over them with Mr. Hall?

18           MR. BREWER:  I have, Your Honor.

19           THE COURT:  And have you fully explained them to

20   him?

21           MR. BREWER:  I have, Your Honor.

22           THE COURT:  Answered any questions that he has

23   concerning it?

24           MR. BREWER:  Yes, sir, Your Honor.

25           THE COURT:  And do you believe that he understands

1    it?

2              MR. BREWER:  I do.

3              THE COURT:  All right.  With respect to the

4    supervised release violation report, I note that at the time

5    the report was filed, and of course this report was held in

6    abeyance pending action on the new criminal conduct, the

7    23-155 case, the violation report at page 3 recites two

8    violations.  The first is new criminal conduct that refers to

9    the indictment in 155, and in number two the use of illegal

10   drugs on or about June 8th, 2023.  It's a positive drug screen

11   for marijuana.

12             Now, I note, Mr. Brewer, that you had initially

13   objected to the new criminal conduct because at that time

14   Mr. Hall had not entered a guilty plea which now he has done.

15   What is your position on those violations at this point?

16             MR. BREWER:  That's correct, Your Honor.  We would

17   withdraw the objections to those violations and admit them at

18   this time.

19             THE COURT:  All right.  So Mr. Hall, do you

20   understand that, that your counsel is telling me that at this

21   time since you've already pled guilty, you're going to

22   withdraw your objections to the supervised release violations

23   alleged, and you're going to admit those?  Do you understand

24   that?

25             THE DEFENDANT:  Yes, sir.

1       **THE COURT:** Okay. And I'm sure Mr. Brewer has

2 talked to you about this, but I just want to go over it with

3 you very briefly. Do you understand that as somebody accused

4 of a supervised release violation, you have the right to have

5 a hearing on that, have the government present evidence

6 regarding the nature of the violation and the proof that you

7 committed the violation? Your attorney can challenge that

8 evidence and cross-examine their witnesses, object to evidence

9 being offered if you choose to contest those violations. Do

10 you understand your right to that hearing?

11       **THE DEFENDANT:** Yes, sir.

12       **THE COURT:** All right. Are you admitting these

13 violations of your own free will?

14       **THE DEFENDANT:** Yes, sir.

15       **THE COURT:** Other than what may have arisen in the

16 related case and in your plea in that case, anybody promised

17 you anything or threatened you in any way to get you to admit

18 these violations?

19       **THE DEFENDANT:** No, sir.

20       **THE COURT:** And as you stand here this morning, are

21 you under the influence of any type of drugs, alcohol,

22 medication, or any other substance that would affect your

23 judgment?

24       **THE DEFENDANT:** No, sir.

25       **THE COURT:** Do you suffer from any kind of medical

1   condition whether mental, physical, or emotional that would

2   affect your judgment?

3            **THE DEFENDANT:**  No, sir.

4            **THE COURT:**  Are you satisfied with the services of

5   your attorney?

6            **THE DEFENDANT:**  Yes, sir.

7            **THE COURT:**  All right, sir.

8            All right.  I find that the defendant is admitting

9   to the violations in 1121 -- excuse me, 2025 freely and

10  voluntarily.  And with respect to the violations in the

11  statutory provisions, guideline provisions that apply to

12  those, the statute provides a period of custody of not more

13  than five years, supervised release of up to life less any

14  term of revocation, and pursuant to Title 18 United States

15  Code § 3583(g)(1), illegal possession of a controlled

16  substance would require mandatory revocation.  Guidelines

17  applicable to Mr. Hall show a grade of violation of A,

18  criminal history category of 3, would reflect a guideline

19  range for imprisonment of 30 to 37 months, supervised release

20  of up to life less any term of revocation.  And, again, the

21  guidelines provide that upon finding of a grade A violation,

22  the Court shall revoke supervised release.

23            Mr. Brewer, any objections or exceptions to the

24  Court's statement of the applicable statutory provisions and

25  guideline provisions as to the supervised release?

1          **MR. BREWER:**  None, Your Honor.

2          **THE COURT:**  Any from the government, Mr. Schoen?

3          **MR. SCHOEN:**  No, Your Honor.

4          **THE COURT:**  All right.  Let's switch gears and talk

5    about the 23-155 case.  In that case with respect to the

6    presentence investigation report, I believe there are some

7    objections, Mr. Brewer; is that correct?

8          **MR. BREWER:**  That's correct, Your Honor.  Three.

9          **THE COURT:**  Let's go head and take those up at this

10   time.

11         **MR. BREWER:**  Judge, what I would say at this point,

12   I've had conversations with Officer Pagan and AUSA Schoen.

13   First of all, with respect to our first objection concerning

14   the leadership role enhancement, the pretrial service officer

15   has already made an adjustment downward from the four-level

16   enhancement to the three-level enhancement on behalf of

17   Mr. Hall.  We're very very grateful for that.  That's not a --

18   that's an uncommon adjustment on their part, and we appreciate

19   that.  Judge, what I would say with respect to objection

20   number one, we're willing to withdraw this if Your Honor is

21   okay with me making some of these same arguments in the

22   context of my variance motion under §~3553(a).

23         **THE COURT:**  I'm happy for you to deal with it in

24   your motion for a variance.  I'm going to leave that up to you

25   as to how you feel it would be best presented.

1     **MR. BREWER:** Understood, Your Honor. I think that's

2     where I would prefer to be able to talk about it.

3          **THE COURT:** All right. Mr. Hall, let me check with

4     you on this. Mr. Brewer has had filed an objection to the

5     presentence report, and basically the objection was that you

6     had been charged with a leadership role in this conspiracy to

7     the extent that it would result in a four-level enhancement.

8     As a result of his objection, probation revised this downward

9     and only imposed a three-level enhancement. Mr. Brewer tells

10    me that rather than proceed with the objection, he would like

11    to make those arguments on your behalf in connection with his

12    motion for a downward variance in your sentencing guidelines.

13    Do you understand that?

14         **THE DEFENDANT:** Yes, sir.

15         **THE COURT:** Are you in agreement with that?

16         **THE DEFENDANT:** Yes, sir.

17         **THE COURT:** All right. Objection one is withdrawn.

18         **MR. BREWER:** Judge, with respect to objection

19    number 2, that's an objection to the characterization of the

20    methamphetamine that was seized in this case as being of a

21    sufficient purity to qualify for an additional enhancement

22    under the guidelines. Judge, I think as a legal matter the

23    way the PSR has been written is probably defensible,

24    notwithstanding my or anybody else's objections to the now

25    existing policy in the guidelines with respect to purity

1    levels of methamphetamine.  And for those purposes, Judge, we

2    would concede that it's been calculated correctly.  But,

3    again, I would like to be able to argue as part of my

4    variance, and, Judge, our motion was also a motion -- well, I

5    apologize.  That's not with respect to this.  In my variance

6    motion I would still like to be able to discuss with the Court

7    the characterization of the methamphetamine as ICE.

8           THE COURT:  All right.  So with respect to the

9    guideline treatment of the relative purity of the

10   methamphetamine, my understanding is that you would prefer to

11   withdraw the second objection but also raise that as an

12   additional issue in your variance motion; is that correct?

13          MR. BREWER:  That's correct, Judge.  And I think the

14   way I'd like to phrase it -- and, Judge, you can characterize

15   it however you want.  I would concede that the guidelines have

16   been properly calculated under the law.

17          THE COURT:  I agree with you that they have.  And so

18   I think it would be difficult to win on an objection, but I

19   certainly understand the argument, and it's not one that is

20   novel before me nor before a lot of courts who have made

21   findings in that regard.

22          MR. BREWER:  Thank you, Judge.

23          THE COURT:  All right.  Mr. Hall, let me ask you

24   about objection number 2.  Mr. Brewer has raised an objection

25   to the effect of the purity of the methamphetamine on the

1   guidelines.  In other words, on your offense level and how

2   that reflects in your guidelines.  As he has indicated, and I

3   agree with him, the way the probation office has prepared the

4   PSR is correct under the existing guidelines.  There's an

5   argument to be made that that purity calculation is somewhat

6   artificial in this day and age because of the relative purity

7   of almost all methamphetamine on the street.  Mr. Brewer wants

8   to reserve the right to argue that difference in the motion

9   for a downward variance as opposed to pursuing it through this

10  objection, and so he is asking to withdraw the objection.  Do

11  you understand that?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  And do you agree with that?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  All right.  Objection number 2 is

16  withdrawn, and I'll allow you to make that argument as part of

17  your motion.

18          MR. BREWER:  And then very similarly, Judge, with

19  respect to objection number 3, the attribution of cocaine and

20  cocaine based weights to Mr. Hall.  Judge, again, I would

21  withdraw this objection just for the -- essentially for the

22  efficiencies of this morning.  If every gram of the cocaine

23  and cocaine base that's attributed to him were removed, even

24  in light of any adjustment you would make with respect to the

25  methamphetamine purity, my calculation and the calculation

1    that I've discussed with the pretrial services officer would
2    not affect any more his base offense level.  And in that sense
3    it's sort of a moot objection.  That being said, I would still
4    ask the Court if I can reserve the right to maybe make some
5    reference to those parts of the case in my variance motion.
6              **THE COURT:**  All right.  I'll be happy for you to do
7    that.  Typically any fact that touches on the totality of the
8    facts and circumstances related to the matter I'm happy to
9    hear from you on.
10             Mr. Hall, let me go over this with you.  Mr. Brewer
11   had made an objection to the drug weight related to the
12   cocaine that had been attributed to you.  He has, much like
13   with the methamphetamine, he is asking to withdraw that
14   objection and argue that in mitigation with respect to your
15   motion for downward variance.  In other words, put that in the
16   package, so to speak, he's going to ask me to consider in
17   reaching a final sentence.  As he has indicated, and as I
18   believe he is correct because I've looked at this as well, I
19   don't know that even if I sustained his objection it would
20   change anything on your offense level and your guideline.  But
21   at any rate, he would prefer to argue that as part of your
22   downward variance motion.  Do you understand that?
23             **THE DEFENDANT:**  Yes, sir.
24             **THE COURT:**  And are you in agreement with that?
25             **THE DEFENDANT:**  Yes, sir.

1      THE COURT:  All right.  So objection number 3 is

2   withdrawn.

3          All right.  Mr. Brewer, are there any further

4   objections to either the presentence report or the supervised

5   release violation report?

6          MR. BREWER:  No, Your Honor.

7          THE COURT:  All right.  Any objections as to either

8   report from the government?

9          MR. SCHOEN:  No, Your Honor.

10          THE COURT:  Hearing no further objections and having

11   fully reviewed both reports, the Court will adopt both the

12   supervised release violation report and the presentence

13   investigation report as revised as the finding of facts for

14   purposes of this hearing.

15          Now, with respect to the 23-155 case, Mr. Hall, you

16   pled guilty to Count 1 of the indictment which is for

17   conspiracy to distribute and possess with intent to distribute

18   methamphetamine and fentanyl in violation of 21 U.S.C. §s

19   841(a)(1), 841(b)(1)(A), and 846.  The statute provides for

20   imprisonment of ten years to life with supervised release of

21   five years to life.  You would be ineligible for any sentence

22   of probation.  The fine is $10 million.  The special

23   assessment fee of $100.

24          The guideline provisions applicable in your case

25   reflect a total offense level of 38, a criminal history

1  category of two.  Probation eligibility, you would be

2  ineligible for any probation.  Your guideline range for

3  imprisonment is 262 to 327 months, five years supervised

4  release.  No fine has been calculated due to inability to pay.

5  There is no restitution applicable in this case and there's a

6  100-dollar special assessment fee.

7          Any objection or exception to the statement of the

8  statutory provisions and guideline provisions applicable in

9  this case from the defense?

10         MR. BREWER:  No, Your Honor.

11         THE COURT:  Any from the Government?

12         MR. SCHOEN:  No, Your Honor.

13         THE COURT:  All right.  Now, Mr. Brewer, I have

14 received your written motion for a downward variance and your

15 briefing related to that in this case.  Are there any other

16 written submissions for the Court's consideration from the

17 defense?

18         MR. BREWER:  Judge, I emailed directly to chambers,

19 I believe, five letters last week, and then filed them as

20 attachments.  Are those things that Your Honor --

21         THE COURT:  Let me take a quick look.

22         Mr. Brewer, it does not look like I have received

23 those.  Give us just a second and I'll certainly get a copy.

24         MR. BREWER:  I have a copy here, Judge, if you need

25 it.

1          **THE COURT:**  You have an extra copy?

2          **MR. BREWER:**  I do, Your Honor.

3          **THE COURT:**  You can just hand that up.

4          Mr. Schoen, I presume the government has no

5   objection to these?

6          **MR. SCHOEN:**  No objection, Your Honor.

7          **THE COURT:**  All right.  Give me just one moment.

8          (Pause.)

9          **THE COURT:**  All right.  The record will reflect that

10  I have received and reviewed letters written on behalf of

11  the defendant, Mr. Hall.  The first letter is from

12  Shanyria Clarke.  The second letter is from Shamyia Hall.  The

13  third letter is from Theodore Hall, Jr. who is the

14  owner/operator of T.J. Hall Trucking, LLC, and I believe

15  Mr. Hall is the defendant's brother; is that correct?

16          **MR. BREWER:**  That's correct, Your Honor.

17          **THE COURT:**  And then the next letter is from Michia

18  and the last letter is from Ramiere Hall.  Does that cover

19  them, Mr. Brewer?

20          **MR. BREWER:**  It does, Your Honor.

21          **THE COURT:**  Anything further for the Court's

22  consideration?

23          **MR. BREWER:**  No, Your Honor.  And thank you, Judge.

24          **THE COURT:**  All right.  With respect to the

25  supervised release and the sentencing in the current case, I'm

1    going to let counsel address these together as they relate to

2    the same conduct.  Mr. Brewer, I think I'm going to hear from

3    Mr. Schoen first, then I'll hear from you and hear you on your

4    motion.  I'll let him respond to the motion, and then I'll be

5    happy to hear anything else you have after that.

6              **MR. BREWER:**  Thank you, Judge.

7              **THE COURT:**  Mr. Schoen.

8              **MR. SCHOEN:**  Yes, Your Honor.  Turning to the

9    3553(a) factors for Mr. Hall, starting with the nature and

10   circumstances of the offense.  As the PSR sets forth, this was

11   large scale drug trafficking that involved methamphetamine and

12   fentanyl.  And we say it over and over again in these

13   courtrooms, we talk about the staggering death toll that is

14   caused by these drugs, particularly overdoses from fentanyl,

15   and to a lessor extent from the methamphetamine.  Over 110,000

16   deaths a year at this point which is -- I did a few

17   calculations.  That's more than -- almost twice the U.S.

18   combat deaths in Vietnam in one year from drug overdoses.

19   It's five times -- more than five times the number of

20   Americans who lose their life to murder.  It's like having 911

21   every two weeks.  More than that.  That's the number of drug

22   overdoses.  It's absolutely staggering.  And this defendant

23   for the purposes of making money was engaged in trafficking

24   two of the worst drugs, arguably unquestionably the worst,

25   fentanyl.  And shockingly, Your Honor, meth and cocaine now

1  are involved in approximately a third of drug overdose deaths.

2  So of that staggering number, meth is playing a significant

3  role as well.  And these are the substances that he is

4  dealing.  He's dealing in large quantities.  He's dealing

5  across multiple states.  This is a conspiracy that began in

6  prison in Mississippi, we believe, and it involved the

7  shipment of drugs all over the country, large amounts of drugs

8  being shipped through the mail from Fresno, California.  And

9  he was taking them as far as Youngstown, Ohio to distribute

10 them.

11         Your Honor, the history and characteristics of the

12 defendant are similarly troubling.  He is on supervised

13 release for a prior federal drug offense.  He has a long

14 history, a long criminal history that involves yet another

15 serious drug conviction by the state.  The fact that his

16 criminal history category is two is solely the product of the

17 fact that he served a long federal sentence and he hasn't been

18 out that long, because if you didn't have that long period of

19 incarceration, what you see when you go back before that is

20 basically just a string of criminal activity involving drugs

21 and firearms.

22         Your Honor, the next factor would be the need for

23 the sentence imposed to reflect the seriousness the offense.

24 We've already addressed the serious nature of this offense.

25 It's not a victimless crime.  It's a serious, serious offense.

1   The need for the sentence to promote respect for law.  This

2   may be the most significant factor.  The thing that stands out

3   to me the most is just the incredible disrespect for the law

4   that exists when a defendant is involved in a drug conspiracy

5   while they're on supervised release for a previous drug

6   conspiracy.  Given the fact that these contacts were made in

7   prison, it's likely that this conspiracy started basically the

8   moment he got out.  He was serving time in federal prison,

9   came right out and starts dealing drugs.  It shows the

10  incredible lack of respect for the law, the need for adequate

11  deterrence.

12          Clearly adequate deterrence has been lacking and

13  it's not because he hasn't spent a lot of time in prison.

14  There's a need for both specific deterrence to deter him

15  because clearly he has not gotten the message that this

16  conduct is unacceptable.  And there's also a need for general

17  deterrence to send a message that if you do this over and over

18  again, eventually there are going to be very very serious

19  consequences.  It's not the kind of thing that you can just

20  do, go right back to prison, join up with another conspiracy

21  and come right back out.

22          Your Honor, the need to protect the public.  As

23  we've talked about, the incredible numbers of drug overdose

24  deaths.  We're in different territory than we used to be.  I

25  think Your Honor mentioned it at a hearing, another hearing

1   that I had with you when you talked about watching someone die

2   from a drug overdose.  It used to be much more like a car

3   accident in slow motion.  Now the slow motion part is gone

4   because so many drugs are now laced with fentanyl that often

5   people don't get any warning.  They use drugs for the first

6   time and they overdose and they're gone.  And there's a need

7   to protect the public from those who would pedal these drugs.

8          There's also a need to protect the public from crime

9   that is being orchestrated and committed, organized from

10  prison.  It's a growing problem.  Your Honor, the need to

11  provide the defendant with needed training, medical care,

12  correctional treatment.  I'm not aware of training and medical

13  treatment that he needs, but clearly there is correctional

14  treatment that is necessary to break this cycle of criminal

15  conduct.

16         The need to avoid unwarranted sentencing

17  disparities.  Your Honor, I would point out the facts here are

18  just a little bit unique.  I don't recall a case where I've

19  asked for a sentence similar to the sentence I'm asking for

20  today based solely on drugs.  It didn't have firearms

21  involved.  That didn't have some of the other aggravating

22  factors that we often see, violence, gangs connected with it.

23  But this case is somewhat unique in this defendant's

24  repetitive decision to deal drugs on a commercial scale.  He's

25  making money through it.  That appears to be the primary

1 motivation.  And in that way he's different from a lot of the

2 other drug trafficking cases that we bring just in terms of

3 the scale and in terms of the sophistication of the drug

4 operation in terms of his criminal history.  He's in a little

5 bit of a category by himself.

6    The final thing that I would argue, Judge, I want to

7 address the supervised release question, because I think the

8 big issue there is whether or not you run the time concurrent

9 or consecutive.  And I'd point out that the guidelines call

10 for the time to be run consecutive unless the Court chooses

11 otherwise.  And in this instance I would ask the Court to

12 impose a consecutive sentence because the purpose of the

13 supervised release revocation sentence is to sanction not

14 primarily the criminal conduct underlying the breach, but the

15 breach of the Court's trust.  And here the Court's trust has

16 been absolutely breached.  This defendant has been out on

17 supervised release and running a major drug operation while

18 he's doing that.  It creates a significant risk to the

19 probation officers.  It shows tremendous disrespect for the

20 law.  Breaches the Court's trust.  And there needs to be a

21 message.  He'll be out on supervised release again.  Look, you

22 can't do this.  And if you do it while you're on supervised

23 release while you're supposed to be following these rules

24 while you're supposed to be using the Court's resources for

25 good in your life, there are additional consequences for

1   breaching that trust.

2          So, for those reasons, Your Honor, we will be asking

3   for a significant guideline sentence.  I'll make a

4   recommendation following Mr. Brewer's argument in terms of

5   what the government would like to see as far as a number of

6   months.  But I want to respond to some of his arguments before

7   I do that.

8          **THE COURT:**  All right.  Mr. Brewer, I'll hear from

9   you on your motion.

10         **MR. BREWER:**  May it please the Court.

11         **THE COURT:**  And any other factual arguments you want

12  to give.

13         **MR. BREWER:**  May it please the Court.  As Your Honor

14  has already noted, we have a motion for downward variance and

15  departure in the sentencing memorandum that we submitted to

16  the Court for the Court's consideration.  Judge, I would just

17  start by saying that it's been a privilege to represent

18  Mr. Hall and to get to know him through this process.  It has

19  been an extremely difficult moment for him, obviously, and for

20  his family.  He and I have had to have some hard conversations

21  throughout.  He's been decent to me.  He's been very engaged.

22  He's cared about this case in every respect.  And I'm going to

23  come back to this later, but he's been honorable in the

24  process.

25         I'd like to say that up front and then quickly

1    follow that by saying he is very acquainted with the offense

2    he has committed against this Court and the U.S. Probation

3    Office and the Government with respect to not only the

4    underlying conduct, but the betrayal of trust that Mr. Schoen

5    has outlined.  It's something that he's understood from the

6    beginning, that we had a lot of conversation about, and I've

7    explained to him was going to greatly color today's

8    experience.  But it's not something that he's been dismissive

9    about.  It's something he regrets.  And he regrets not just

10   because he's been caught, but he regrets it because he was in

11   fact trying to do different.  And that's not going to be a

12   narrative that Mr. Schoen is going to agree with today.  And

13   it may not even be a narrative that the Court can accept on

14   certain levels.  But it's what he's expressed to me from the

15   first day we met.  It's what I've experienced with him.  It's

16   what I've experienced and seen in his relationship with his

17   family and friends and what I believe even the PSR alludes to

18   a little bit in terms of the chronology of this case.

19           Judge, he has a lot of people with him here today.

20   And I'm not going to identify all of them, but some of them,

21   his sister, Reverend Patricia Booker.  She's here on the

22   left.  Shanika Rice.  Emma Coleman.  And then we have

23   Ms. Shannon Tucker in the back.  Mr. Hall, who wrote the

24   letter on behalf of his brother is here today.  And then

25   Ms. Stephanie Jackson, her family members as well.  We also

1   some other friends of the family that are here.

2           Judge, I don't know that any of them are going to be

3   able to address the Court this morning.  I would just say on

4   their behalf that they love William.  And I think you see some

5   of that reflected in the letters from his children especially,

6   you know, every -- it's true of every defendant that comes

7   before you.  I do think it's particularly true of Mr. Hall.

8   He's a family man.  He's made some very bad life choices.  And

9   part of the narrative this morning is that he's here and has

10  been through this process to admit and face those bad life

11  choices.  But everybody is a mixed bag.  And a large portion

12  of his bag is somebody that cares about his family, and that

13  has been responsible with his family.  And that's why you have

14  this showing that you do here today and what's in some of the

15  letters before you.

16          Judge, I am asking for a combined sentence on behalf

17  of Mr. Hall, something like 15 years or less.  And I want to

18  do a little bit of math at the end for Your Honor on kind of

19  how I get there.  But just up front I think something like

20  that, and that would include however Your Honor wants to

21  structure it, but consecutive sentences with both underlying

22  conduct and the supervised release hearing.  Or if you prefer

23  not to sentence the supervised release hearing as

24  aggressively, but something like 15 years or less.  And I

25  think that, without jumping the gun, I think that a sentence

1   in that range can still greatly comport with the, not just the

2   statutory factors under § 3553(a), but the concerns that

3   Mr. Schoen has explicitly expressed and concerns I know that

4   Your Honor has about Mr. Hall in this case.

5          Judge, he's 39 years old and was born in Union,

6   South Carolina.  He has five children.  Judge, he had no

7   relationship with his father.  He was essentially raised by

8   Reverend Booker.  Both his parents are now deceased.  Judge,

9   he went to -- you see it in the PSR, he went to mental health

10  treatment by the time he was 15 years old.  Had some diagnosis

11  that came from that.  He's been exposed to drugs from a very

12  early age, and then he was on his own by the time he was 17

13  years old.

14         Judge, I've cited some social science in our

15  memorandum, but I don't think you need a whole lot of social

16  science to know that these are all severe risk factors

17  completely outside of Mr. Hall's control that would have

18  affected the entire trajectory of his life.  And again, I'm

19  not here to offend Your Honor's sensibilities about Mr. Hall

20  or these kind of cases, but it's actually to his credit just

21  how adjusted and responsible he is.  There is a zero percent

22  chance that he had anything to do with finding himself in a

23  mental health treatment facility by the time he was 15 years

24  old.

25         Judge, with respect to his decision to plea -- and

1   I've outlined this in our memorandum.  I mean -- I mean, what

2   I've offered in the memorandum.  It's not -- I'm not trying to

3   spin these particular circumstances.  And I'd like to address

4   Mr. Schoen's characterization of this case as somewhat unique

5   in a little bit.  I think both of us agree but for sort of

6   different reasons.  This is a type of case that Your Honor

7   sees where a defendant is facing something like 20 to 30 years

8   on paper.  It's an -- it's an incomprehensible amount of time.

9   And short of -- it's just an incomprehensible amount of time.

10  And none of us in here other than Mr. Hall had to spend a day

11  in jail and knows what that feels like.

12          And so the conversation with a defendant like

13  Mr. Hall, which is not representative of the conversations you

14  have with a lot of defendants, is very different.  So when I

15  come to Mr. Hall and ask him about his choices or present to

16  him his choices, he's got a limited few.  And one of them is

17  to do precisely what he did in this case, and that is to admit

18  what he's done and basically nakedly plea to what he's been

19  accused of.  And he was willing to do that in this case.  And

20  Your Honor knows what it feels like and what it looks like for

21  a defendant to waste this Court's time and resources to

22  gratuitously try a case.  And not only is it a waste of the

23  government's time and resources, and it's a massive

24  expenditure of resources, but it actually creates a little bit

25  of an absurdity in real time.  And Mr. Hall elected to spare

1    himself and everybody that part of the process.  He didn't

2    even move for bond, Your Honor.  And I know the government

3    might say, well, he wasn't going to get bond.  But, and I want

4    to talk about some of these things in a second.  But there

5    were some circumstances that would have made a bond request

6    facially colorable, whether he would have gotten it or not.

7            But the point is the government doesn't like

8    proffering agents unnecessarily that might create a record for

9    a subsequent trial or for any other difficulties in its work

10   on their behalf.  He didn't file any motions to suppress.

11   Judge, we evaluated the discovery.  You evaluated Mr. Schoen's

12   very generous offers at different times with respect, and by

13   generous I mean some invitations, not superior plea

14   opportunities.  Mr. Hall and I had those difficult

15   conversations over time.  And instead of just gambling, which

16   some defendants do and which he's sort of incentivized to do

17   frankly by the guidelines, he did the right thing.

18           The problem is he is rewarded with the exact same

19   outcome as someone who's facing eight years on paper, and that

20   is a three-year level adjustment for acceptance of

21   responsibility which again he's grateful for.  We're glad that

22   the guidelines offer that in the first instance, but not all

23   acceptance of responsibility is created equal.

24           THE COURT:  Mr. Brewer, let me clarify the record

25   because I think you misspoke unintentionally.  With respect to

1    the acceptance of responsibility is three points, not three

2    years.

3         **MR. BREWER:**  Correct.  I did not -- three points --

4    three points off his base offense level.  Yes.  That's

5    correct.  But it's a fixed amount regardless of what their --

6    and instead of the guidelines could be a percentage basis, you

7    could get 15 percent off.  So if it's eight, a little bit less

8    if it's 30, that's not how the Commission has chosen to do

9    that, and we understand that.  But not all acceptance of

10   responsibility is created equal.  And someone like Mr. Hall,

11   the important part is, Judge, whatever you might do with this

12   argument today, to the extent I'm going to ask at the end that

13   you use that as some part of a basis of part of your variance,

14   it's not opening the floodgates because Your Honor can on a

15   case-by-case -- first of all, they're a lot of Mr. Hall's

16   circumstances where the circumstances being an enormous paper

17   exposure and basically a straight up plea.  That person is

18   doing something that behaves very similarly in all the ways

19   I've described to a kind of cooperation that I think

20   Your Honor can take into account and credit a little bit

21   differently, and a little bit above and beyond the three

22   levels that he otherwise earns for acceptance of

23   responsibility.

24          Judge, and Mr. Schoen has alluded to it, or I think

25   he has.  I know he's going to say so in the response.  You

1   know, our job as defense counsel is to explain to our clients

2   their options and give them a choice to do it and be prepared

3   to try this case.  And I've been on the other side.  I've

4   walked through these experiences with a lot of defendants.  I

5   know what to recommend.  And I want -- I'm trying to figure

6   out the best way to say it, I want my clients to do the things

7   that are in their best interests, Judge.  And I would just

8   say, we had a lot of conversations about that.  But some of

9   the options didn't comport, and I just don't want to offend

10  Your Honor, but didn't comport with his character, Judge.  And

11  it's not because he lives by some sort of street code or he's

12  recalcitrant because he's not, Judge.  But because -- and I

13  use the words I started with, he's decent and honorable.  I

14  don't really know how else to say it.  And the way he was able

15  to express his remorse and his regret was to plead, and to

16  plead expeditiously, and to plead under circumstances where he

17  was in some peril.

18          Judge, I would like to turn now to the purity

19  concerns.  And Judge, we cited that *Moreno* decision out of the

20  District of West Virginia.  And Your Honor has already

21  pre-staged sort of the basic concerns.  Since 2011 by the

22  DEA's own statistics, the average purity of methamphetamine

23  has been north of 90 percent.  So this isn't a recent

24  development over the last 15 years.  That particular detail

25  has essentially kind of neutered or made less sensible any

1    sort of distinction.  So whatever distinction there may have

2    existed at the time, the guidelines as were written has

3    essentially gone.  But what that *Moreno* decision also says,

4    Judge, is that guideline distinction in the first instance was

5    not really empirically derived.  In other words, the

6    Commission itself in the promulgation of that distinction

7    didn't even cite science to make that distinction.  *Moreno*

8    says basically they keyed off of the differences that existed

9    in Congress' statutory mandatory minimums and just said, we're

10   going treat these things differently.  So there wasn't really

11   an empirical basis at the beginning.

12          And then kind of fast forward, you know, I think

13   Your Honor, Your Honor knows just anecdotally, and certainly

14   Mr. Schoen has made some reference to it.  We actually know

15   certainly, I think we knew probably at the time, we certainly

16   know the things like heroin and fentanyl are actually

17   probably, you know, qualitatively more dangerous drugs to

18   which Mr. Hall is being penalized in this case for directly,

19   and we don't even have to sort of make that sort of comparison

20   in the abstract.

21          And then the last part that *Moreno* suggests, it says

22   the whole enterprise has resulted in kind of a, not some

23   degree of randomness, but a pretty significant degree of

24   randomness because if the materials are tested in a state

25   laboratory, usually state laboratories don't have the capacity

1    to do the purity determination.  And so there's this

2    arbitrariness under the case law as the, you know, Mr. Hall's

3    controlled -- the controlled substances that were taken off

4    other defendants in this case were tested in federal

5    laboratories.  And just by a function of that he's sort of

6    facing this where it could have been sent somewhere else.

7    *Moreno* just says there's a degree of randomness here.

8            Judge, I'm not -- and this is why we didn't frame it

9    as an objection.  We're not asking you to make new law,

10    Your Honor.  I think *Moreno* and other district courts have,

11    and I believe Your Honor has sort of done it in other cases,

12    have sort of demonstrated the path, recognized the issue,

13    calculated the guidelines properly as the pretrial services

14    office has done and as Your Honor recognized, and without them

15    and if you make a 3553(a) analysis.  Judge, under -- as the

16    PSR is written, its converted drug weight is

17    143,392 kilograms.  I don't know why -- this is sort of a

18    dogleg.  But I don't know why the converted drug weight has to

19    speak in such terms to begin with, because it's not that kind

20    of kilograms that are trafficked in this case.  So, it's sort

21    of like an explosion of the number just to convert them into

22    these large kilogram drug weights.  But if Your Honor is

23    amenable to removing that characterization as ICE, or taking

24    that characterization off, it takes his converted drug weight

25    down to 45,416, which really is -- it's a huge number in terms

1     of the converted drug weight.  But it just essentially moves

2     him from a 38 base offense to a 36, Your Honor, which I think

3     is reasonable, and it's still a lot of base offense level,

4     Your Honor, considering all the circumstances.

5               Judge, with respect to -- with respect to the

6     leadership and kind of the underlying circumstances of the

7     case, I would sort of start by -- so, first of all, I don't

8     think the PSR, the discovery reflects -- I don't think the PSR

9     that you have in front of you reflects that this started in

10    prison.  I don't think that's before the Court.  Mr. Schoen

11    has represented that to Your Honor.  In fact, if you look at

12    the PSR, Your Honor, I believe that I think the first -- I

13    don't want to over represent it either, it's just earlier.

14    But I think May 2021 is the first time that Mr. Hall is

15    implicated in the PSR.  I don't believe there's something that

16    we have in front of us here today that talks about where this

17    actually generates.  And I will stand corrected if I've

18    overstated that.

19              I think more importantly, Judge, I think I'm -- I

20    don't -- Mr. Schoen's concern about Mr. Hall is justified.

21    And I think Your Honor shares it.  I don't think this is some

22    exceptional DTO, okay.  That's not to say, and I want to

23    continue to confess both the horror and the danger of the

24    controlled substances that Your Honor is going to speak to

25    later.  But there are a lot of these sort of conspiracies, A.

1    Second, and this is not to -- I'm not attempting to

2    contest the PSR on the factual basis.  But if Your Honor --

3    the PSR says this.  Most of the alleged weight is weight that

4    co-conspirators are talking about.  So this is not a case

5    where the government has seized 50, a hundred kilograms.  So,

6    it's a little bit of a hard line to walk, Judge.  And I don't

7    want you to hear me saying wrong.  But I don't think there's

8    something uniquely extravagant about this drug trafficking

9    organization.  It's big.  It was affecting a lot of people.

10   Mr. Hall is here to admit that.  I just kind of want to sort

11   of reign in I think what I think is a little bit of an

12   over-characterization from Mr. Schoen.

13   I think the last part with respect to the leadership

14   and the nature of the organization is, I think the pretrial

15   services office reasonably comes to these moments.  What they

16   do is they have from the government people that have talked,

17   and they have a number of people.  And these things check

18   boxes for purposes of the leadership enhancement.  But some of

19   these cases -- and, again, this isn't me having to argue

20   uniquely the discovery.  I think the PSR speaks to it.  And

21   I've cited some of this in our memorandum.  I'm going to quote

22   one in a second.  What it actually reflects is not some sort

23   of severe and obvious hierarchy of individuals that Mr. Hall

24   is dictating either as like the second or third in chain of

25   command or the top.  But literally like just other people like

1    Mr. Hall, Mr. Sims who appeared in front of you last week.  I
2    mean, Mr. Ellens who's in Ohio.  I mean these are people like
3    Mr. Hall who are making bad choices that are making them
4    together.
5         And Judge, I cite in the -- the PSR is full of it.
6    It's not just in one place.  But in paragraph 20 it states, it
7    says, Ellens, that's the individual in Ohio, would contact
8    Hall and request an order.  The defendant would have to
9    contact, and this is to quote, the Mexicans, and then the
10   Mexicans would deliver cocaine to Mr. Hall.  I know it's
11   perilous to reemphasize actually how Mr. Hall has participated
12   in the organization.  But what I would say is in that
13   particular situation and in other places, Mr. Ellens actually
14   directed the behavior of Mr. Hall.  Mr. Hall is engaged in
15   this.  He shouldn't have been.  All of that is a problem.
16        I just think that, Your Honor, again, on a
17   case-by-case basis can make a distinction in these moments
18   between cases where you really have, for lack of a better
19   phrase, a kingpin or somebody who's really directing the
20   conduct, and then somebody who's participating in arms-length
21   transactions with other people of essentially coequal
22   responsibility.  I know I'm not arguing this as an objection.
23   But Your Honor knows the guidelines say you shouldn't.  You
24   know, you're looking at did he take a bigger distribution of
25   profits.  Like who was he directing conduct and that sort of

1   thing.  And so I think there's things you can still measure.

2   We don't have any evidence of any of those things.

3          Judge, at the end of it all -- one of the reasons

4   this is frustrating for me and on Mr. Hall's behalf is, he was

5   doing well.  And, again, I think this is something you don't

6   have to fully take my word for it.  It's reflected in the PSR.

7   He was working.  He was doing the trucking business.  And you

8   see this reflected in some of the letters that Your Honor has

9   already reviewed.  And the PSR -- and, again, I don't want to

10  overstate this.

11         If Mr. Schoen says something differently, I'll avail

12  to it, but the last -- the last thing that concerns Mr. Hall

13  in the PSR is on June 9th, 2022, and he actually starts

14  reworking for T.J. Hall Trucking in 2022, 40 hours a week.

15  He's not arrested for another year later.  And I flag that for

16  a couple of reasons.  The first is, and I'll just say this

17  lightly, would have been part of the bond argument or referred

18  to earlier about how much -- how much concern the government

19  has about Mr. Hall.  We have a big period of time where they

20  allegedly knew he was doing stuff and he sort of righted the

21  ship.  And the supervised release thing, and I'm going to say

22  it a couple more times, is very offensive.  But they knew

23  where he was.  He was otherwise in compliance with supervised

24  release.  And you have this period of time that I think what I

25  really want to emphasize to the Court is a reflection of what

1  I'm representing this morning to Your Honor, that he was

2  trying to right the ship.  Ms. Booker is -- Pastor Booker has

3  reflected that he was going to church.  And it's not okay for

4  him to be doing this while federal officers are monitoring him

5  on supervised release.  It's not.  But I think he found

6  himself in a difficult situation.  He made some bad choices.

7  But I also think Your Honor has some evidence that way before

8  he was indicted, a year before he was indicted or almost a

9  year before he was -- excuse me.  I should say arrested.  He

10 was trying to make changes in his life.

11         Judge, he's going to jail for a long time.  He

12 regrets all of this.  The math that I would just offer to Your

13 Honor if -- Judge, if you take off the purity, he was a 36,

14 which takes the low end of his guideline I think to 210

15 months, which is about 17-and-a-half years, and to the extent

16 I've miscalculated all this.

17         Judge, I think that naked plea has to account for

18 something.  And I think something like another two-and-a-half

19 years down to 15 just isn't that dramatic to the extent

20 Your Honor is amenable to the purity adjustment.  I think

21 there are also reasons to take the edge off of the leadership

22 role in this case.  And, again, I don't want to say things

23 that makes it harder for Your Honor to I think do what is

24 right by Mr. Hall.  But, you know, it's a big Delta between --

25 and the government's going to explain all the reasons why that

1    Delta is justified.  But it's a big Delta between Mr. Sims and

2    three years.  I know Mr. Sims cooperated.  And something like

3    15 years is still a big Delta and a large punishment.  Judge,

4    you see it in the letters.  Michia said her father with

5    strength, the father with hope, a father with intelligence, a

6    father with love.  Shanyria said, I've never seen him turn his

7    back on someone that needed him.

8             Judge, whether you give him 13 or 14 or 15 years or

9    more, it is a tremendous amount of time.  A single day in that

10   place -- in those places are brutal.  It's more than enough to

11   penalize him.  It's more than enough to dis-incentivize him.

12   It's more than enough to protect the public, Judge.  All of

13   the things that Mr. Schoen is concerned about can be met by

14   something a little bit more reasonable.  He's going to be

15   almost 50 years old by the time he's released, Your Honor.  So

16   for all those reasons we would just request a variance as

17   outlined in our motion.  Thank you, Judge.

18             **THE COURT:**  Mr. Schoen.

19        **MR. SCHOEN:**  Your Honor, I want to start with the

20   argument regarding the meth calculation.  And I want to just

21   be very clear that I think probation has calculated the meth

22   correctly.  They have not done anything other than what the

23   law and the guidelines require them to do.

24             That being said, I understand Mr. Brewer's argument.

25   I think that it is a reasonable argument.  I don't think it

1  does -- I don't think it serves me or the government well for

2  me to stand up here and tell you, Judge, that that's crazy.  I

3  think that the points that he's raising are valid points.  I

4  know that Your Honor has applied a meth mix calculation in

5  other cases, and I think that's a reasonable decision to make,

6  just being candid and honest with the Court.

7          I think that -- I agree that the final range without

8  supervised release violation in that case is that 210 to 262.

9  So without taking some sort of position that I'm not

10  authorized to take, I would just say that I think the argument

11  has a reasonable basis, and I defer to whatever the Court

12  decides to do with that argument.  As not strongly as I'm

13  objecting to that particular argument, I'm going to

14  strenuously object to the suggestion that a straight up plea

15  in this case should be treated in any type of way similar to

16  cooperation.  And I want to dig down into some of the

17  assumptions under that argument and address why I think

18  they're misplaced.

19          There are instances certainly where a defendant

20  commits an offense, and really the only thing left for that

21  defendant to do is to come in and plead promptly.  And the

22  government always appreciates it when people don't waste our

23  time, don't waste the Court's time by making frivolous

24  arguments.  Mr. Brewer essentially referred to this in

25  somewhat cryptic, or not so cryptic terms, the fact that we

1     wanted Mr. Hall to cooperate, and that's true.  We believe

2     that there was information that he could provide because of

3     the structure of this drug trafficking organization that could

4     help the government and that could help him.  And so he has a

5     right not to cooperate.  And I know the Court will not

6     penalize him in any way for exercising that right.  That being

7     said, I don't think he gets to come in here and say, well, I

8     basically cooperated because I pled guilty; I did everything I

9     could.  That is definitely not true.  There were options on

10    the table and we wanted to talk to him and he said, no.

11            I think it's also somewhat concerning to

12    characterize as honorable or to characterize maybe using the

13    inverse as dishonorable, the decision of someone to tell the

14    truth.  It's never dishonorable to tell the truth and to help

15    the government to intercept the poison that is fentanyl and

16    meth.  That is not in any way dishonorable behavior.  And I

17    think that the suggestion that it is is deeply troubling.

18            I also want to address the argument about the sort

19    of one size fits all plea impact that, you know, in

20    cooperation in a case like this, or I should say a prompt plea

21    in a case like this costs the defendant a lot more, and

22    they're not getting a greater benefit.  And that's just not

23    true as a mathematical matter given the way the guidelines

24    work.  So Mr. Hall at 39, a three-level enhancement, a

25    three-point reduction in base offense level represents a huge

1    amount of time because as the offense levels go up, the bands

2    get bigger.  So if you go from a 39 to a 36, that's an

3    82-month cut.  Where if you started at 20 and dropped to a 17,

4    that's a ten-month cut.  The guidelines absolutely take into

5    account exactly what Mr. Brewer is talking about.  The fact

6    that, hey, you need something, a big incentive for somebody to

7    plead guilty in a case like that.  And the guidelines offer a

8    big incentive.  82 months is a huge, huge period of time.  It

9    would be even higher if we went with the -- if the Court

10   applied the meth guidelines that, you know, the guidelines

11   actually call for.  But even with that level 36, we're talking

12   about, you know, almost seven years off of the guideline

13   calculation as a result of simply pleading guilty.

14           He references the fact that there would be a bond

15   argument.  Judge, I went back and looked at his sentencing

16   transcript from the last time he was in federal court.  And I

17   can assure you this would have been an argument the government

18   would have presented to the magistrate judge in addition to

19   the fact that he was -- had a previous federal sentence, was

20   on supervised release the last time he got a bond in federal

21   court.  He violated that bond because he had marijuana and his

22   bond was revoked.  So, I understand it's certainly nice not to

23   have to defend a frivolous bond motion.  But there was

24   literally I can't imagine any set of circumstances under which

25   any of our magistrate judges would have granted this

1  particular defendant a bond under the circumstances that

2  presented themselves in this case.

3          Your Honor, I think that given the calculation of

4  the 210 to 262, what I would ask the Court to do is to run his

5  supervised release violation consecutive.  And for that reason

6  we would ask for a sentence of 250 months.  So that would be

7  on the high end if Your Honor ran the guideline -- or ran the

8  supervised release concurrent.  But it's close to the bottom

9  of the range if you run them consecutive.  I think that that

10  represents a huge sentence, Judge.  I won't make any bones

11  about it.  That's a huge amount of time.  But I think that

12  it's justified in this case.  And I think that, you know,

13  there's a suggestion that in some ways Mr. Hall is not that

14  different from Mr. Sims.  But Your Honor sentenced Mr. Sims.

15  You're familiar with the facts of his case.  You're familiar

16  with his criminal history.

17          **THE COURT:**  You don't need to spend much time on

18  that.

19          **MR. SCHOEN:**  Yes, Your Honor.  This defendant by

20  contrast has got a long criminal history of this very same

21  type of conduct.  And to the extent that, you know, he might

22  say, listen, this is frustrating because I was going to do

23  better, Judge, I'm not in his head or his heart, and I can't

24  address whether or not he was.  But what I can tell the Court

25  is that part of the reason that there was not a faster

1    decision to take him off of the streets was because there was

2    an ongoing investigation into a larger organization. And

3    additionally I'll tell the Court that part of the reason, to

4    the extent that he did stop, part of the reason is --

5              THE COURT:  That's reflected in the PSR with regard

6    to the very first paragraph about the offense conduct, that

7    this was a referral from the FBI office in Brownsville about a

8    drug trafficking organization.

9              MR. SCHOEN:  Your Honor, that's a summary of the

10   facts that I think the Court should consider.  I want to thank

11   the agents, Task Force Officer Gioia and Special Agent Smith

12   who are here in court, put a lot of work into this case.  And

13   with that we would defer to the Court and ask for that

14   sentence of 250 months.

15             THE COURT:  All right.  Mr. Brewer, obviously the

16   last thing I want to do is hear from Mr. Hall.  Anything

17   further before I do that?

18             MR. BREWER:  Your Honor, can I just address a couple

19   of things real briefly.  I said --

20             THE COURT:  Let's do it briefly because I think I've

21   heard you on most of your points.  But if there's anything you

22   need to respond to, I'll be glad to give you the opportunity.

23             MR. BREWER:  No.  In light of that, Your Honor, I'm

24   good.  Thank you.

25             THE COURT:  All right.  Mr. Hall, you have the right

1    to address the Court before I reach a decision regarding your

2    sentence.  You're not obligated to say anything.  But if

3    there's anything you want to tell me about yourself, about

4    this situation, about anything else that you think I should

5    take into consideration in determining a reasonable sentence

6    under the facts and circumstances of this matter, I'll be glad

7    to hear from you.

8          THE DEFENDANT:  Yes, Your Honor.  First, I want to

9    apologize to you, Your Honor, the government for even being

10   here this morning.  And most importantly my family for putting

11   them through this a second time.  I made some bad choices, and

12   I'm here to accept responsibility.  And whatever punishment

13   you give me, I'll take that time to rehabilitate myself.

14         THE COURT:  All right, sir.

15         Anything else, Mr. Brewer?

16         MR. BREWER:  No, Your Honor.

17         THE COURT:  Mr. Schoen?

18         MR. SCHOEN:  No, Your Honor.

19         THE COURT:  All right.  Since this all arises out of

20   the same facts and circumstances, the discussion I have here

21   is going to equally apply in both cases except with regard to

22   the fact that as counsel is aware, there are certain

23   sentencing factors that I have to take into account with

24   respect to the new conduct that would not be appropriate with

25   respect to the supervised release violation, and the Court

1    notes that and will abide by those sentencing requirements.

2         I want to deal first with respect to the 23-155 case

3    and the motion for a downward departure or downward variance.

4    Based upon my review of the presentence report and the

5    calculation of the guidelines and the criminal history, I will

6    state that I do not find a legal basis for a departure and so

7    I'm going to deny that part of the motion.

8         With respect to the motion for downward variance, I

9    want to try to address the various arguments raised by the

10   defense and the government, and in doing so address the

11   sentencing factors and where I think this case needs to be.

12        Mr. Brewer brings up Mr. Hall's age and his

13   upbringing to the extent that he never had a relationship with

14   his father and that he was exposed to illegal drugs at a

15   fairly early age and was on his own before age 18.  With

16   respect to Mr. Hall's age, the primary finding that I think is

17   relevant to this determination is that he's old enough to know

18   better.  He's not a 20-year-old kid who got in over his head.

19   This is not his first rodeo.  He was in front of Judge~Childs

20   on similar charges.  He got a significant sentence and

21   apparently didn't learn very much from it.

22        With respect to his difficult upbringing.  While

23   unfortunate, it is not atypical of a lot of folks who appear

24   in front of this Court, many of whom have been able to either

25   overcome those circumstances in the first instance, or put

1   those circumstances behind them as they age and mature and

2   understand the importance of conforming to the law and the

3   rules and expectations of society.

4           With respect to the argument that Mr. Hall saved the

5   government and the Court a good deal of time and expense by

6   virtue of his decision to plead guilty and by virtue of the

7   fact that he did not seek a bond hearing in this case, I find

8   that the fact he did not seek a bond hearing is virtually

9   unpersuasive based upon the facts and circumstances of this

10  case.  I think that that was a reasonable decision to make,

11  and I'm not aware of any legal basis upon which to give him

12  credit for that decision.

13          Likewise, with respect to his decision to plead

14  guilty, to the extent that he should receive credit for

15  acceptance of responsibility, he has received that.  And as

16  was pointed out by the government, because of the graduated

17  nature of the guideline tables, the offense tables, he

18  received significant benefit from his decision to accept

19  responsibility for his conduct and enter an early plea of

20  guilty.

21          With respect to the arguments regarding the

22  calculation of the meth, methamphetamine based on purity and

23  how that affects the guidelines.  I do agree with Mr. Brewer

24  that the guidelines at least at this point in time have what

25  seems like an unrealistic ratio that they apply between a

1    mixture containing meth and pure meth or what is referred to

2    sometimes as ICE, because quite frankly, as has been set out

3    in numerous court decisions and studies across the country,

4    virtually all methamphetamine now is almost completely pure as

5    that term is understood.  I believe the guideline cutoff is

6    90 percent or better.  And most of what we see these days is

7    probably 95 percent or better.  And so I think Mr. Brewer

8    raises a good point there.  And because the guidelines were

9    properly calculated under the existing guideline provisions, I

10   don't think it's grounds for departure, but I do think it's

11   grounds for a variance in this case.  And so to that end, I

12   will vary down the two points to a total offense level of 36.

13   And I will state for the record that Mr. Brewer has correctly

14   stated that range, which is 210 to 262 months.

15           Now, Mr. Brewer has also raised in his motion, and I

16   believe he also mentioned today that Mr. Hall has a number of

17   children whom he hopes to be a part of their lives.  He has

18   family support as is reflected by the number of people here in

19   attendance today, and obviously has family responsibilities

20   and obligations.  However, in this case I think the nature of

21   his conduct outweighs any additional consideration with regard

22   to those arguments.  And I don't find them compelling in light

23   of the sentencing factors that I have to take into

24   consideration, specifically being the seriousness of the

25   offense and the need to impose appropriate punishment.

1          With respect to the defense request for a sentence

2     of 15 years or below, the Court finds that such a sentence

3     under these facts would be insufficient to accomplish the

4     necessary purposes of sentencing.  And to the extent that an

5     argument was raised with regard to unwarranted sentencing

6     disparities with regard to leadership role or the sentence

7     imposed upon the co-defendant, Mr. Sims, I want to briefly

8     address that.

9          First of all, there is a significant difference

10    between Mr. Hall and Mr. Sims.  Mr. Sims had virtually no

11    criminal record to speak of.  Mr. Sims has a significant and

12    well documented mental health issue that makes him susceptible

13    to suggestion or persuasion.  And in fact the PSR reflects

14    that Mr. Sims was recruited by Mr. Hall to serve as a courier

15    or messenger or driver for a sum of money which the Court

16    finds would have been a significant inducement to Mr. Sims,

17    not only because of his mental health issues but also because

18    of his relatively recent disability status and fixed and

19    limited income that he was trying to support his family with.

20    So to the extent that there is any attempt to compare the two,

21    the Court finds there is no comparison.

22         Furthermore, with respect to the leadership role,

23    the Court specifically finds that a three-point leadership

24    role as that is defined under the guidelines is entirely

25    appropriate in this case.  And to that extent the Court would

1    point toward not only the recruitment of Mr. Sims as is

2    related in the PSR, but also the fact that Mr. Hall when

3    Mr. Sims would be transporting drugs or currency, Mr. Hall

4    apparently, as reflected by the facts set out in the PSR,

5    would either travel in tandem or shadow Mr. Sims to keep an

6    eye on him, which would indicate some degree of oversight or

7    supervision in addition to the fact that Mr. Sims was either

8    getting the drugs from Mr. Hall to deliver to another

9    location, or the currency, and returning -- he was either

10   receiving from Mr. Hall one thing to take to another place or

11   picking up something somewhere else and delivering it to

12   Mr. Hall.  He was essentially a courier for Mr. Hall, and

13   that's reflective of Mr. Hall's leadership role.

14           Further, with respect to counsel's description of

15   what would happen with Mr. Ellens in Warren, Ohio.  The Court

16   would not characterize that as Mr. Ellens directing Mr. Hall's

17   conduct.  Rather the Court would characterize that as

18   Mr. Ellens placing an order with a distributor in order to

19   obtain drugs.  And in fact the PSR's reflection of Mr. Hall's

20   response in that regard is consistent with that role for him,

21   which was that Mr. Ellens placed the order and Mr. Hall said,

22   okay, I'll talk to the Mexicans, which was his source of

23   supply.  And I'm not sure what the PSR means by, "the

24   Mexicans".  I know this originated out of Brownsville, Texas.

25   I don't know if we're talking about a cartel or a couple of

1   Mexicans in Brownsville somewhere.  But what I do know is that

2   they were the source of supply.  And Mr. Hall was the one who

3   was directing its distribution through these trips that

4   Mr. Sims made on his behalf and through these deliveries to

5   Mr. Ellens in Ohio.

6          So the long and the short of it is that I think the

7   PSR correctly reflects that Mr. Hall was a major drug

8   trafficker.  He was a distributor and he was directing where

9   these shipments went as set out in the PSR.

10         Now, with respect to that, I have to consider the

11   seriousness of the offense.  And as has been stated, and I

12   won't take a lot of time on this, but this is a very serious

13   offense.  However, you calculate this and I understand

14   Mr. Brewer's frustration with how converted drug weight is

15   calculated.  And it comes up with some outrageous numbers.

16   But however you calculate this, this was a significant amount

17   of narcotics that was being trafficked in this case.  It was

18   meth and it was fentanyl.  And that's what Mr. Hall pled

19   guilty to.  Those are drugs that have caused untold tragedy in

20   this country.  And I always hear about the defendant's family

21   and his obligations to his family.  And this is no disrespect,

22   Mr. Hall, to you or your family whatsoever, but when I take

23   into account the seriousness of the offense, I have to take

24   into account the effect on the families of these addicts who

25   ended up with these drugs.  And the children whose parents who

1    were disabled by these drugs to where there was no food on the

2    table, no roof over their head, husbands, fathers, wives,

3    daughters, brothers, sisters whose lives have been ruined and

4    whose families lives have been ruined because of people like

5    you who want to spread this poison simply to make money from

6    doing so.  To that end, that's another aspect of this case

7    that is different from a lot of cases that come in front of

8    me.

9         There are an awful lot of folks who come in front of

10   me and plead guilty in a conspiracy like this who are

11   essentially addicts themselves.  They're hooked on

12   methamphetamine or fentanyl.  And so they agree to distribute

13   some in order to get drugs to feed their own habit.  In your

14   case, based upon what the PSR reflects, the only drug

15   addiction beyond marijuana that you acknowledged was an

16   addiction to opiates.  And you indicated at the time of the

17   PSR that you had not used those in over 20 years.  Alcohol,

18   occasional marijuana use.  What that tells me is if that's all

19   you were doing at the relevant point in time, this was a

20   business transaction.  This was an economic transaction.  And

21   that I think adds to the severity of the conduct.  Maybe it's

22   addition by substraction.  But it takes away at least one

23   mitigating factor that some folks have who are addicts who

24   come in front of me.

25        With respect to your history and characteristics.

1    Again, I won't belabor the point, but you do have a history of
2    dealing drugs.  Judge~Childs sentenced you to a significant
3    period of imprisonment, 120 months, ten years, which should
4    have been enough to give anybody a wake-up call.  But even
5    then she sentenced you to the low end of the range and she
6    gave you a little bit of a break.  And the way that was repaid
7    was a violation of the Court's trust on the supervised release
8    and new criminal conduct of a very similar nature except for
9    potentially even greater scope.

10            It is important that the Court fashion a sentence
11   that is sufficient to create deterrence against this happening
12   again.  That is both specific and general deterrence.
13   Specific deterrence is to incapacitate you for a significant
14   period of time so that you don't do this again since you have
15   shown a propensity to continue doing it.  And secondly, in
16   terms of general deterrence so that nobody else out there who
17   has better skills and can hold down a job and do things the
18   right way decides that this is easy money, and this is a way
19   that supplements my income and makes money.  I want to make
20   sure that this sentence is such that it would disabuse others
21   of any such ideas.

22            And finally, as was discussed earlier, there are
23   issues of protection of the public and respect for the law.
24   And I want to make sure that this sentence is sufficient to do
25   both of those things.  Number one, create some respect for the

1    law.  And if not a positive respect for the law, then maybe a

2    healthy fear of the law on your part and to protect the public

3    by incapacitating you for a sufficient period of time that you

4    won't be doing this again.

5          With respect to the supervised release violation,

6    and for the reasons previously stated, the previously imposed

7    terms of supervised release is hereby revoked pursuant to the

8    Sentencing Reform Act of 1984.  And having considered the

9    Chapter 7 policy statements in the United States Sentencing

10   Guidelines Manual, as well as the statutory factors applicable

11   to revocation sentences under 18 U.S.C. §s 3553(a) and

12   3583(e), it is the judgment of this Court that the defendant,

13   William Michael Hall, is hereby committed to the custody of

14   the Bureau of Prisons to be imprisoned for a period of 30

15   months with no further supervision to follow on that case.

16         With respect to Case No. 23-155, after having

17   calculated and considered the advisory sentencing guidelines

18   and having also considered the relevant statutory sentencing

19   factors contained in Title 18 United States Code § 3553(a), it

20   is the judgment of this Court that the defendant, William

21   Michael Hall, a/k/a Big Mike, is hereby committed to the

22   custody of the Bureau of Prisons to be imprisoned for a term

23   of 210 months.  That term will run consecutive to the term for

24   the supervised release.

25         It appears the defendant does not have the ability

to pay a fine, therefore the fine is waived.  The defendant shall pay the mandatory 100-dollar special assessment fee. Upon release from imprisonment the defendant shall be placed on supervised release for a term of five years.  While on supervised release the defendant will comply with all the mandatory conditions of supervision as outlined in 18 U.S.C. § 3583(d), the United States Sentencing Guidelines § 5D1.3(a), as well as the standard or discretionary conditions outlined in United States Sentencing Guidelines § 5D1.3(c).  All as noted in paragraphs 118 and 121 of the presentence report which are specifically incorporated by reference herein.

        Standard conditions of supervision 1 through 9 and 13 serve the statutory sentencing purposes of public protection and rehabilitation pursuant to 18 U.S.C. § 3553(a)(2)(C) and D.  Standard conditions of supervision 10 and 12 serve the statutory sentencing purpose of public protection pursuant to 18 U.S.C. §~3553(a)(2)(C).  Standard condition of supervision 11 ensures the defendant does not engage in activities that may potentially conflict with the other conditions of supervision and that may pose risk to the defendant's probation officer.  The defendant shall also comply with the following special conditions for the reasons set forth in the presentence report which has previously been adopted by this Court as the finding of facts for purposes of sentencing.

1      Number one, you must submit to substance abuse
2   testing to determine if you have used a prohibited substance
3   and you must contribute to the cost of that testing program in
4   an amount not to exceed that determined reasonable by the
5   court-approved United States Probation Office's sliding scale
6   for services.  And you will cooperate in securing the
7   applicable third-party payment such as private insurance or
8   Medicaid.  This random drug testing is being ordered due to
9   the nature of the incident offense as well as the defendant's
10   criminal history and his prior drug use as indicated in
11   paragraphs 102 and 103 of the presentence reports.  Drug
12   testing will help assist the probation officer in ensuring the
13   defendant remains in compliance with the conditions of his
14   supervision by not being involved in the use or possession of
15   controlled substances.
16      Now, respect to the conditions of confinement,
17   Mr. Brewer, I'll be happy to recommend that Mr. Hall be
18   assigned by the BOP to a location as close to the
19   Greenville/Spartanburg area as possible for facilitation of
20   visitation.  Are there any other recommendations you have?
21      **MR. BREWER:**  Yes, Your Honor.  We'd appreciate that.
22   Specifically, he'd be interested in going to Edgefield if you
23   could make that recommendation specifically.  And Judge, if
24   you would and, you know, you have limited ability to influence
25   the BOP, but that he just be recommended for RDAP and any

1    other programs which would qualify.  And then also this is a

2    very specific, but if maybe you could make some recommendation

3    for a sleep apnea and hearing evaluation or a medical

4    evaluation for those two circumstances.

5          THE COURT:  All right.  A couple of things with

6    regard to the location.  I'll be happy to recommend Edgefield

7    specifically.  Again, as I'm sure you've told Mr. Hall, BOP is

8    not -- they're not bound by the recommendations I make.

9    They're going to assign you based on space availabiity and

10   security level and other factors.  However, typically if they

11   can follow the Court's recommendation and do those other

12   things, they will, and I'll be happy to make that

13   recommendation.

14         Likewise, I'll also recommend that Mr. Hall be

15   evaluated for and placed in any appropriate treatment programs

16   relative to substance abuse such as the RDAP Program, and also

17   with regard to his medical needs as outlined in the PSR and as

18   they may be at the time of his assignment.

19         MR. BREWER:  Thank you, Judge.

20         THE COURT:  Anything else?

21         MR. BREWER:  Lastly, Judge, do I have permission to

22   allow him to take his PSR with him at this time?

23         THE COURT:  No, sir.

24         MR. BREWER:  Okay.  And then I can find some other

25   way if Your Honor -- would I be able to have those copies of

1  those letters by any chance, Judge?  I think they're filed in

2  the record.

3          THE COURT:  Yes, sir.  If they've been submitted for

4  filing, they're a part of the record and you can have those

5  copies back.

6          MR. BREWER:  Thank you, Judge.

7          THE COURT:  Lastly, while the sentences are being

8  run consecutive with respect to this sentence, I will note

9  that I find that the defendant should be given credit for time

10  served to be computed by the Bureau of Prisons.  As I've said

11  on many occasions, I know, Mr. Brewer, you've heard me say

12  this, jail is jail whether it's pretrial or subsequent.  And

13  Mr. Hall should get credit for that.

14          MR. BREWER:  Thank you, Your Honor.

15          THE COURT:  All right.  I believe that I have

16  calculated the advisory guideline range properly and correctly

17  addressed the points raised by the parties.  However, if it is

18  later determined that I have not, I will state for the record

19  that I would have imposed this same sentence as an alternate

20  variance sentence in light of all of the 18 U.S.C. § 3553(a)

21  factors, and in light of the totality of the circumstances

22  present in this case.

23          Are there any objections or exceptions to the form

24  of the Court's sentence from the government?

25          MR. SCHOEN:  No, Your Honor.

1          **THE COURT:**  Any from the defense?

2          **MR. BREWER:**  None, Your Honor.

3          **THE COURT:**  All right.  Mr. Schoen, with respect to

4    any remaining counts and the forfeiture, what's the

5    government's pleasure?

6          **MR. SCHOEN:**  The government would move to dismiss

7    the forfeiture allegation, and I believe he pled to the only

8    count.

9          **THE COURT:**  All right.  The forfeiture is dismissed.

10         Mr. Hall, with respect to your right to appeal this

11   sentence, I want to go over that with you.  When you entered

12   into a written plea agreement with the government, paragraph 9

13   of that plea agreement said that you understood that you have

14   the right to contest your conviction or sentence by way of a

15   direct appeal or certain post conviction actions such as an

16   action under 28 U.S.C. § 2255.  Understanding those rights and

17   in exchange for concessions being made by the government in

18   this case, you agreed that you would waive your right to any

19   direct appeal or post conviction action by which to challenge

20   your sentence subject to exceptions for claims of ineffective

21   assistance of counsel, prosecutorial misconduct, or if the law

22   changes at some point after your sentence in a way that would

23   affect your sentence.  If you believe that you have grounds

24   for an appeal that are outside the scope of that waiver, or if

25   for any reason you believe that that waiver is invalid and you

1    wish to appeal your sentence, you would need to do so within
2    14 days from the entry of the written judgment in this case.
3    That judgment will most likely get entered either this
4    afternoon or tomorrow.  So to be on the safe side, you would
5    need to file your notice of appeal with the Clerk of Court no
6    later than two weeks from today.  Do you understand that?
7              **THE DEFENDANT:**  Yes, sir.
8              **THE COURT:**  All right.  I'm sure Mr. Brewer has
9    talked with you about your appeal rights.  I'm going to direct
10   him to do so again before you leave here today so that you
11   have no question whatsoever about what you need to do should
12   you wish to appeal this sentence.
13             And Mr. Hall, let me just reiterate, those appeal
14   rights would equally apply to your supervised release
15   violation sentence.  And in that case you did not have any
16   appellate waiver.  So in that case with respect to that part
17   of the sentence, you would have those appeal rights
18   regardless.  So it's the same 14 days to get your notice of
19   appeal in.
20             Now, with respect to your sentence, Mr. Hall,
21   there's no way that I can make this sound less than it is or
22   sweeten this up or to use an old expression, put lipstick on a
23   pig.  You committed a very serious violation.  You committed a
24   very serious violation in the context of your prior record.
25   And because of that you're going to have to do substantial

1    time.  As you know from having been in the BOP before, if you

2    conduct yourself in a good manner you can earn good time

3    credit.  You can earn time off and it won't be quite as long

4    as it is stated.  The big thing for you is, you will be

5    getting out and you've got to make some decisions about what

6    you want to do when you get out.  You've shown the capacity

7    for going one of two ways.  You've shown the capacity for

8    jumping right back in the deep end of the pool when it comes

9    to criminal behavior.  And if you do that, you will likely get

10   caught again and you'll likely end up spending most of the

11   rest of your life behind bars.  You also in the months leading

12   up to the arrest in this case by Mr. Brewer's description, I

13   know the government might take issue with this, but certainly

14   by virtue of what I read from your brother about you working

15   for the trucking company, you also know how to do things in a

16   legitimate way.  You also know how to be a good father as was

17   evidenced by the letters from your daughters.  I hope you'll

18   choose to do things that way.  Because if you do, you still

19   have a significant portion of your life that you can enjoy

20   with your family and they with you.  And I hope that's the way

21   you'll go.  I wish you the best of luck.

22              Anything further, Mr. Brewer?

23              **MR. BREWER:**  No, Your Honor.  Thank you, Judge.

24              **THE COURT:**  Mr. Schoen?

25              **MR. SCHOEN:**  Your Honor, you said there was an 851

1    enhancement.  I believe we've withdrawn that.  But if that had

2    not already been withdrawn in the record, it is withdrawn

3    pursuant to the plea agreement.

4             **THE COURT:**  Okay.  And I appreciate you reminding me

5    of that because I had seen that pop up in the PSR, and I

6    intended to ask you and Mr. Brewer about that.  But the record

7    will reflect that that enhancement was withdrawn as part of

8    the plea agreement.  Is that correct, Mr. Brewer?

9             **MR. BREWER:**  That's right, Your Honor.

10            **MR. SCHOEN:**  Thank you, Judge.

11            **THE COURT:**  All right.  If there's nothing further,

12   that will conclude this matter.  Thank you very much.

13            **MR. SCHOEN:**  Thank you.

14            **MR. BREWER:**  Thank you.

15       (Court adjourned at 11:26 a.m.)

16

17                      CERTIFICATE

18       I,  Michele E. Becker, certify that the foregoing is

19       a correct transcript from the record of proceedings

20       in the above-entitled matter.

21

22   /s/  Michele E. Becker              Date:  April 9, 2024

23

24

25